## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: CV - _____

| | |
|---|---|
| Linh Dang,<br><br>         Plaintiff,<br><br>v.<br><br>NCO Financial Systems, Inc.<br>Christina Jones<br>Krista Plattes,<br><br>         Defendants. | **COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

### JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and out of the invasions of Plaintiff's personal privacy by these Defendants in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

### PARTIES

4. Plaintiff Linh Dang is a natural person who resides in the City of Buffalo, County of Wright, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant NCO Financial Systems, Inc. (hereinafter "Defendant NCO") is a foreign corporation and a collection agency operating from an address of 507 Prudential Road, Horsham, Pennsylvania and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

-1-

6.      Defendant Christina Jones (hereinafter "Defendant Jones") is a natural person in the employ of Defendant NCO and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6)

7.      Defendant Krista Plattes (hereinafter "Defendant Plattes") is a natural person in the employ of Defendant NCO and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6)

## FACTUAL ALLEGATIONS

8.      On or before November 10, 2007 Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a Bank of America/MBNA credit card in the approximate amount of $9,650.94, which was used by Plaintiff to make personal purchases of food, clothing, and shelter-related items.

9.      Sometime in or around November 2007, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff, when thereafter Plaintiff started receiving collection communications from Defendants in an attempt to collect this debt.

10.     On or about November 10, 2007, Plaintiff received from a letter from Defendant.

### *Call from NCO Financial to Mei Dang*

11.     On or about November 26, 2007, Mei Dang, Plaintiff's sister-in-law received a call from a Defendant NCO on her cell phone.

12.     Defendant NCO had originally called Mei Dang home, but her 10-year old son had answered the call. When Defendant NCO asked to speak to his mother, he stated that she wasn't home but gave NCO her cell phone number.

13.     On or about November 26, 2007,  Defendant NCO called Mei Dang on her cell phone.

14. When Mei Dang answered the phone, Defendant NCO stated, "Your husband owes money" and began explaining that Linh Dang owed money to Bank of America/MBNA.

15. Mei Dang repeatedly attempted to explain that Linh Dang was not her husband, but her sister-in-law.

16. Despite being informed that Linh Dang was not Mei Dang's husband, Defendant NCO continued to discuss Linh Dang's complete credit history and the debt with Mei Dang.

17. This call from Defendant NCO to Mei Dang was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692c(a)(1), 1692c(b), 1692d, and 1692f, amongst others.

18. As a result of this call and the threat to sue Plaintiff, Mei Dang became concerned and discussed the matter with Plaintiff's mother who lives with Mei Dang.

19. Plaintiff's mother became extremely upset and worried and contacted Plaintiff about the matter.

20. After the call, Mei Dang called Plaintiff Linh Dang and told her of the call.

21. Linh Dang then asked her husband Lou Loung to call Defendant NCO on her behalf.

22. On or about November 26, 2007, Lou Loung contacted Defendant NCO on behalf of Plaintiff.

23. Mr. Loung initially talked with Defendant Plattes. During the course of the conversation, Mr. Loung informed Defendants that Plaintiff did not live with Mei Dang and requested that they not contact or discuss the matter with her any further.

24. Mr. Loung also attempted to negotiate a settlement of the debt, but indicated that Plaintiff could not afford to pay the entire debt at that time.

25.  Defendant Plattes stated that if Plaintiff didn't pay the entire debt Defendants would take their home.

26.  At this point, Mr. Loung became upset and requested to speak with Defendant Plattes supervisor.

27.  Mr. Loung was then connected to Defendant Jones.

28.  Mr. Loung again attempted to negotiate a settlement on behalf of Plaintiff; however, Defendant Jones told him, that unless she paid the full amount of the debt, Defendants would sue Plaintiff and then "liquidate" her home to pay the debt.

29.  Mr. Loung stated to Defendant Jones that he didn't believe that was legal and ended the conversation with Defendants.

30.  This call was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 1692d, 1692e, 1692e(4), 1692e(5), 1692e(10), and 1692f, amongst others.

31.  On or about November 27, 2007, a few minutes after 8:00 a.m., Defendant Plattes again contacted Mei Dang, and informed her Plaintiff was supposed to call her and hadn't.

32.  Mei Dang stated that Plaintiff did not live with her and that Defendant should stop calling her.

33.  Defendant Plattes informed Mei Dang that unless Plaintiff paid the debt Defendants would sue her.

34.  Mei Dang told Defendant Plattes that she would lend Plaintiff $5000 dollars to pay Defendants.

35.  Defendant Plattes told Dang that they would not take a check and requested that Mei Dang provide her checking account information so Plattes could send an electronic check through.

36.   Mei Dang refused to provide the information, and informed Plattes that she would have to talk with Plaintiff.

37.   This call from Defendant NCO to Mei Dang was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(a)(1), 1692c(b), 1692d, and 1692f, amongst others.

38.   On or about November 27, 2007, after learning that Defendants had again contacted Mei Dang, Plaintiff again asked Mr. Loung to contact Defendants and request that they stop contacting Mei Dang.

39.   On or about November 27, 2007, Mr. Loung again contacted Defendant NCO and talked with Defendant Plattes.

40.   During the course of this conversation, Mr. Loung again asked that Defendant NCO stop contacting Mei Dang.

41.   During the course of this conversation, Defendant Plattes repeated the threat that Defendant NCO would sue Plaintiff and suggested that Plaintiff use her American Express Card to pay off the debt.

42.   Mr. Loung then stated that he felt Defendants had violated the FDCPA, at which time Plattes became defensive and stated that she could not discuss Plaintiff's account with him any longer without permission from Plaintiff.

43.   When Plaintiff then attempted to give permission, Defendant Plattes hung up.

44.   This call was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 1692d, 1692e, 1692e(4), 1692e(5), 1692e(10), and 1692f, amongst others.

***Summary***

-5-

45.    The above-detailed conduct by Defendants, of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and by revelation of financial private facts.

46.    Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## TRIAL BY JURY

47.    Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

48.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49.    The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

50.    As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up

to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

**COUNT II.**

**INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY**

**REVELATION OF PRIVATE FINANCIAL DATA TO THIRD PARTY**

51.     Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

52.     Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

53.     Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates a broad range of "financial institutions" whose definition includes debt collectors, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

54.     Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

55.     Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt thereby invading and intruding upon Plaintiff's right to privacy.

56.     The repeated calls to Mei Dang are examples of Defendants' conduct which violated Plaintiff's right to financial and other privacy.

57.     Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs.

58.     These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

59.     As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

-8-

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

## COUNT II.

### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY REVELATION OF PRIVATE FINANCIAL DATA TO THIRD PARTY

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the FDCPA violations and invasions of privacy in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 28, 2008

**BARRY & SLADE, LLC**

By: **s/Nicholas P. Slade**
Nicholas P. Slade, Esq.
Attorney I.D.#0270787
2021 East Hennepin Avenue Suite 195
Minneapolis, Minnesota 55413-2700
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810

**Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF WRIGHT            )

Plaintiff Linh Dang, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.


_____**Lihn Dang**_____
Linh Dang

Subscribed and sworn to before me
this _12_ day of __December___, 2007.


_s/ Rawshan J. Huq_____
Notary Public


Notarized only for LINH LE DANG-LUONG on this twelfth day of December, 2007.  My commission expires January 31, 2012

RAWSHAN J. HUQ
Notary Public
Minnesota
My Commission Expires January 31 2012